UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RAMEL THEODORE TROY,

Plaintiff,

v.                                                          CAUSE NO. 3:24-CV-605-PPS-APR

JACK HENDRIX, et al.,

Defendants.

OPINION AND ORDER

Ramel Theodore Troy, a prisoner without a lawyer, filed an amended complaint

against nine defendants. Troy alleges the defendants placed him on department-wide

restrictive housing status for about four years while he was housed at Westville Control

Unit, denied him a meaningful review of this placement, and subjected him to certain

conditions of confinement, in violation of his Fourteenth and Eighth Amendment rights.

He also asserts he was prevented from exercising his religion, sending and receiving

mail, and accessing the courts in violation of the First Amendment. Troy further

contends that his Fourteenth Amendment equal protection rights were violated when

he was treated less favorably than inmates in disciplinary segregation and he was

denied access to the grievance process.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint,

however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation

marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the

1

merits of a prisoner's complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

*Background*

In his amended complaint[1], Troy states he was housed in restrictive housing units in two different states from August 2015 to January 2024. ECF 6 at 1, 20. He was initially housed at a facility in North Carolina, where he was placed in disciplinary segregation for sixty days for possessing a homemade knife. *Id*. at 20. After he completed his disciplinary time, Troy was reclassified and placed in administrative segregation in North Carolina until February 26, 2020, when an out-of-state compact contract was granted, allowing Troy to be transferred to an Indiana Department of Correction facility. *Id*. Troy believed that, once he was transferred, he would be placed in general population. *Id*. He was subsequently transferred to Westville Control Unit ("WCU"), but instead of being placed in general population, he was placed on department-wide restricted housing.[2] *Id*. at 7, 20. He remained at WCU until January 24,

---

[1] Admittedly, this Court has taken a long time to screen this complaint, and generally speaking parties have a right to expect better. But Troy's amended complaint is 46 pages in length, disorganized, and difficult to understand. He scatters facts and defendants throughout the 46-page complaint expecting the court to piece them together to determine if he may proceed on any claims. This resulted in a time-consuming review process.

[2] Restrictive housing (*i.e.*, segregation) is used for disciplinary purposes when segregation time is imposed after a hearing on a conduct report, or it can be used administratively, as a "form of housing for offenders whose continued presence in the general population would pose a serious threat to life, property, self, staff, or other offenders, or to the security or orderly operation of a facility." Ind. Dep't of Corr. Policy & Admin. Proc., *Administrative Restrictive Status Housing*, No. 02-01-111 (eff. Oct. 1, 2021), at p.2, available at https://www.in.gov/idoc/files/policy-and-procedure/policies/02-01-111-ARSH-10-1-2021.pdf (last visited May 13, 2026). Department-wide administrative restrictive status housing, as opposed to a unit within a facility designated as restricted housing, is designed to house "offenders at a facility who have a history of battery on others or who, in the opinion of Department or facility staff, present an extraordinary threat to themselves or others or who present special safety and security concerns (e.g., seriously injuring staff or offenders, participating in a hostage situation, identified as a

2024. *Id*. at 20. After that, he was transferred to Wabash Valley Correctional Facility where he is currently housed. *See* ECF 5.

Troy is suing about events that occurred while he was housed at WCU from February 2020 to January 2024. ECF 6 at 20. He asserts his placement in WCU's restrictive housing was improper because his placement was based on past conduct and amounted to continued punishment for conduct violations that occurred at a North Carolina Department of Corrections facility. *Id*. at 10, 28. Troy represents he has not had a major disciplinary infraction in over six years, yet he was not released from WCU "due to his conduct history in North Carolina." *Id*. at 21. He explains that the criteria used for placement in WCU's restrictive housing was vague, subjective, and inadequate to protect his liberty interests. This enabled the defendants to house him indefinitely in WCU. *Id*. at 13. Troy contends the defendants sanctioned his placement in WCU without any meaningful review or a hearing and told him placement in WCU was appropriate due to "safety and security" concerns. *Id*. at 9, 21. In other words, Troy claims the defendants used department-wide restrictive housing status as a pretext for punishing him. *Id*. at 28. Troy asserts he was subjected to conditions that amounted to an atypical and significant hardship such that he was entitled to due process, and the process he received at WCU was inadequate. *Id*. at 29. He seeks monetary damages and a permanent injunction for the alleged violations. *Id*. at 43-45. But his request for a permanent injunction is moot because he is currently housed at Wabash Valley

---

security threat group leader, heavily involved in trafficking or having a lengthy history of serious [Class A and/or Class B] disciplinary code violations)." *Id.* at 4. The policy mandates periodic review of an administrative placement. *See id.* at pp.14-15.

Correctional Facility (not WCU) and there is no indication that he will be returned to WCU anytime soon. *See* ECF 5.

*Fourteenth Amendment Due Process*

The Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1. The Constitution does not create a due process liberty interest in avoiding transfer within a correctional facility or remaining in the general prison population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Instead, an inmate will be entitled to due process protections only when the more restrictive conditions pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484-85. After *Sandin*, inmates have no liberty interest in avoiding short-term transfer to segregation for administrative, protective, or investigative purposes, even when they are subjected to harsher conditions as a result. *See, e.g., Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008); *Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005).

But placement in long-term segregation (approaching a year or more) is a different kettle of fish. It can implicate a liberty interest, requiring further inquiry into whether the conditions of confinement impose an atypical, significant hardship. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698-99 (7th Cir. 2009) (determination of whether 240 days in segregation imposed an atypical, significant hardship could not be made at the pleading stage); *see also Atwater v. Nickels*, No. 21-2510, 2022 WL 1468698, at *1 (7th Cir. May 10, 2022) (citing *Marion*, 559 F.3d at 694-98). However, there is no firm

4

rule as to the amount of time that must be spent in segregation to trigger a liberty interest, and instead courts must "look to both the duration of the segregation and the conditions endured." *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019); *Jackson v. Anastasio*, 150 F.4th 851, 858 (7th Cir. 2025) (the duration and severity of the conditions must be considered when determining whether the prisoner's placement in solitary confinement triggers due process protections—the length of time must be "substantial" and the conditions must be "unusually harsh"); *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017) ("Prisoners do not have a constitutional right to remain in the general population, . . . but both the duration *and* the conditions of the segregation must be considered in determining whether due process is implicated.") (internal quotation marks, parenthesis, and citations omitted; emphasis in original); *Jackson*, 150 F.4th at 860–61 (noting that segregation periods of a year approach the "outer limit" of the Seventh Circuit's current due process caselaw and that "[l]ong terms of solitary confinement are not necessarily unconstitutional, at least not yet. But they call for at least some due process protections that apply when prison discipline deprives a prisoner of a liberty interest").

In his amended complaint, Troy describes restrictive conditions he endured for four years at WCU. ECF 6 at 21-24. He says the conditions can best be described as a "cognitive restructuring experiment project," which caused him "considerable physical and psychological pain and suffering." *Id*. at 21-22. Troy's conditions entailed limited opportunities for social interaction because he was confined to a single-man cell twenty-three to twenty-four hours each day. *Id*. at 22. The lights in his cell were kept on twenty-

four hours a day and he was handcuffed when he was escorted out of his cell. *Id*. He was only permitted one hour of out-of-cell exercise in a small cage each day. *Id*. His mail was routinely read, censored, and searched. *Id*. Troy could not hold a job or participate in vocational or educational programs. *Id*. His phone calls were restricted or denied, and he could only have video visits with family. *Id*. Troy was denied access to the law library and not allowed to purchase commissary items. *Id*. Troy states he was subjected to religious persecution and discrimination. *Id*. He was denied nutritional meals, proper clothing, and bed linen. *Id*. at 22-23. His water supply was contaminated with lead and tasted and smelled of sewage. *Id*. at 23. These conditions caused him difficulty concentrating and maintaining organized thoughts. *Id*. As a result, he suffered from depression, anxiety, memory loss, and general physical deterioration. *Id*.

Troy has plausibly alleged that his long-term confinement in WCU under conditions that are significantly harsher than those endured by inmates in general population implicates a liberty interest protected by the Fourteenth Amendment. *See Wilkinson v. Austin*, 545 U.S. 209, 224 (2005). In such a case, due process requires periodic review of whether an inmate's placement in administrative segregation continues to be appropriate so that it does not become "a pretext for indefinite confinement of an inmate." *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983). The Constitution requires only an "informal and nonadversary periodic review (the frequency of which is committed to the discretion of the prison officials) that keeps administrative segregation from becoming a pretext for indefinite confinement." *Isby*, 856 F.3d at 525 (quotation marks omitted). Although a statement of reasons for the

continued placement is not constitutionally required, the review must be "an actual review—*i.e.*, one open to the possibility of a different outcome[.]" *Id*. at 528. "[P]rison officials must look to the inmate's present and future behavior and consider new events to some degree to ensure that prison officials do not use past events alone to justify indefinite confinement." *Id.* (quoting *Proctor v. LeClaire*, 846 F.3d 597, 611 (2d Cir. 2017)).

Troy alleges he did not receive meaningful reviews of his placement while on department-wide restrictive status at WCU. ECF 6 at 21, 31, 37. He asserts his reviews ignored his present and future behavior and relied on past events that occurred in North Carolina alone to justify his indefinite confinement in WCU. *Id*. at 10, 21, 31, 36. Troy asserts his reviews constituted a pretext for indefinite segregation. *Id*. at 28, 33.

Troy contends Commissioner Christina Reagle, Interim Deputy Commissioner Annyie Goeller, Warden John Galipeau, Director of Classification Jack Hendrix, Unit Team Manager ("UTM") Tracy Cornett, Caseworker Kathleen Dougherty, and Caseworker Marisha White each failed to provide him with meaningful reviews, which caused him to be indefinitely confined on restrictive status in WCU. *Id*. at 31. Here, Troy alleges that each of the seven defendants was personally involved in his long-term confinement in WCU and did not provide him with meaningful reviews related to his placement in WCU. Giving Troy the benefit of all plausible inferences, he has alleged enough to proceed beyond the screening stage. Accordingly, he may proceed against each of the seven defendants on a claim for a due process violation for being held in department-wide restrictive status in WCU for approximately four years, without a meaningful review, in violation of the Fourteenth Amendment.

Troy also believes he should have been given a full hearing to decide whether his placement in WCU was appropriate, similar to a prison disciplinary proceeding. ECF 6 at 29, 31. He states he was placed in WCU without any kind of hearing even though he faced an indefinite term of confinement. *Id.* at 17. However, the constitution does not mandate that he receive a hearing. *Westefer v. Neal*, 682 F.3d 679, 684-85 (7th Cir. 2012). While he contends state law requires he be given a hearing, the provision he relies on—Indiana Code § 11-11-5-5—applies to disciplinary actions.  The state law provision that applies to administrative segregation (Ind. Code § 11-11-5-6) does not provide a private right of action, so it is a nonstarter as well.

To the extent Troy asserts that the seven defendants violated IDOC policy by not affording him a hearing, a policy violation, on its own, does not state a constitutional claim. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations"); *Conner v. Hoem*, 768 Fed. Appx. 560, 564 (7th Cir. 2019) (same) (citing *Garcia v. Kankakee Cnty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002)). In short, any theory that relies on the defendants' failure to adhere to internal policies cannot go forward.

### Eighth Amendment Conditions of Confinement

Troy also seeks to raise claims under the Eighth Amendment based on his long-term confinement in WCU. ECF 6 at 36. He asserts that Commissioner Reagle, Interim Deputy Commissioner Goeller, Warden Galipeau, Director of Classification Hendrix,

UTM Cornett, Caseworker Dougherty, and Caseworker White knew about the harmful and restrictive conditions but did nothing to rectify his situation. *Id.* at 32, 33, 36.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend*, 522 F.3d at 773. An officer can violate the Constitution if he exhibits deliberate indifference to hazardous conditions that may seriously harm an inmate. *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021). Deliberate indifference encompasses both objective and subjective components:

> A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety. Second, in covering the subjective component of the inquiry, the inmate must prove that prison officials acted with deliberate indifference — that they knew of and disregarded this excessive risk of harm to the inmate.

*Thomas*, 2 F.4th at 719–20 (internal quotation marks, citations, and brackets omitted). Put another way, an inmate can state a viable claim for deliberate indifference if he alleges the defendant "deliberately ignored a prison condition that presented an objectively, sufficiently serious risk of harm." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citation omitted). This is an exacting standard. *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022); *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020); *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). This means that simple negligence or even objective recklessness does not satisfy deliberate indifference. *Stockton*, 44 F.4th at 615.

9

As noted above, Troy describes conditions that resulted in limited social interaction and forced isolation because he was confined to a single-man cell twenty-three to twenty-four hours each day. ECF 6 at 22. He describes his cell lights as being turned on twenty-four hours a day and he was only permitted one hour of exercise each day. *Id*. Troy alleges that his mail was routinely read, censored, and searched. *Id*. He asserts he was not permitted to have a job or participate in vocational or educational programs. *Id*. Troy contends his phone calls were restricted or denied and he could only have video visits with family. *Id*. He could not use the law library and was not permitted to purchase items from the commissary. *Id*. Troy alleges he was persecuted based on his religion. *Id*. He contends he was also denied nutritional meals, clothing, and bed linen. *Id*. at 22-23. Troy states his water supply was contaminated with lead and smelled of sewage. *Id*. at 23.

These allegations are potentially sufficient to rise to the level of an Eighth Amendment violation—they allege a denial of the minimal civilized measure of life's necessities that created a risk to Troy's health and safety. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019).  The Eighth Amendment claim will therefore move forward past screening.

### *First Amendment Retaliation*

Troy next asserts that Commissioner Reagle, Interim Deputy Commissioner Goeller, Warden Galipeau, Director of Classification Hendrix, and UTM Cornett retaliated against him for exercising a number of his First Amendment rights. ECF 6 at 9-10, 27, 32, 33, 39. He asserts he was housed in long-term confinement in WCU because

he exercised his religious rights and engaged in protected speech—sending and receiving mail and filing grievances. *Id*. Troy also believes he was housed in WCU to prevent him from accessing the courts. *Id*. at 30, 33.

To state a claim under the First Amendment, a plaintiff must allege "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citation and internal quotation marks omitted). The third factor requires some "causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). However, Troy has not alleged facts from which it can plausibly be inferred that any defendant decided he would be housed in WCU because he exercised his rights under the First Amendment. Nor can it be plausibly inferred that any defendant decided that Troy should be housed in WCU to prevent him from accessing the courts. He may not proceed with this claim.

*Fourteenth Amendment Equal Protection*

Troy also alleges that Commissioner Reagle, Interim Deputy Commissioner Goeller, Warden Galipeau, Director of Classification Hendrix, UTM Cornett, Custody Supervisor Lewis, Caseworker Dougherty, Caseworker Hicks, and Caseworker White violated his Fourteenth Amendment Equal Protection rights because they allegedly reduced the amount of confinement for inmates in disciplinary segregation but increased the amount of his long-term confinement in WCU. ECF 6 at 37. Here, he

11

asserts that an inmate assigned to disciplinary segregation has typically broken a prison rule and will receive a maximum sanction of one year for an offense. *Id*. at 13-16. However, an inmate assigned to department-wide restrictive housing has not broken a prison rule but can be housed there indefinitely. *Id*.

Troy's allegations that the differences in the length of confinement for inmates in department-wide restrictive housing and disciplinary segregation do not state an equal protection claim. Because the two groups of inmates (those in department-wide restrictive housing and disciplinary segregation) are not treated differently due to membership in a suspect class, rational basis review applies. *See Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016). "Prison classifications are presumed to be rational and will be upheld if any justification for them can be conceived." *Id.* To uphold governmental conduct under rational basis review, the court "need only find a reasonably conceivable state of facts that could provide a rational basis for the classification." *Indiana Petroleum Marketers & Convenience Store Ass'n v. Cook*, 808 F.3d 318, 322 (7th Cir. 2015). The safety and security risks of those inmates assigned to department-wide restrictive housing as opposed to those inmates assigned to disciplinary segregation provide a rational basis for the differential treatment. The Equal Protection claim therefore fails.

*Exhaustion of Administrative Remedies*

Troy further argues that Commissioner Reagle, Director of Classification Hendrix, Warden Galipeau, UTM Cornett, Custody Supervisor Lewis, Caseworker Dougherty, and Caseworker Hicks denied him access to the grievance process at WCU. ECF 6 at 24-26, 39. He asserts they refused to give him grievance forms and process his

grievances because they knew he needed to first proceed through the grievance process before he could file a lawsuit. *Id*. at 24-25. Troy also states he was told that issues related to his placement in WCU could not be grieved. However, he has no constitutional right to access the grievance process. *Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). Troy may not proceed here.

*Miscellaneous Motions*

As a final matter, Troy has filed a motion for screening time frame (ECF 17) and a motion for status conference report (ECF 21). Both motions pertain to his request for the court to screen his amended complaint. Because his amended complaint has now been screened, these motions will be denied.

Accordingly, the court:

(1) DENIES the Motion for Screening Timeframe (ECF 17);

(2) DENIES the Motion for Status Conference Report (ECF 21);

(3) GRANTS Ramel Theodore Troy leave to proceed against Commissioner Christina Reagle, Interim Deputy Commissioner Annyie Goeller, Warden John Galipeau, Director of Classification Jack Hendrix, Unit Team Manager Tracy Cornett, Caseworker Kathleen Dougherty, and Caseworker Marisha White in their individual capacities for compensatory and punitive damages for being held in department-wide restrictive status in the Westville Control Unit from approximately February 26, 2020 through January 24, 2024, without a meaningful review, in violation of the Fourteenth

Amendment; as well as his claims under Eighth Amendment related to the conditions of his confinement;

(4) DISMISSES all other claims;

(5) DISMISSES Custody Supervisor Gary Lewis and Caseworker Lisa Hicks;

(6) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Commissioner Christina Reagle, Interim Deputy Commissioner Annyie Goeller, Warden John Galipeau, Director of Classification Jack Hendrix, Unit Team Manager Tracy Cornett, Caseworker Kathleen Dougherty, and Caseworker Marisha White at the Indiana Department of Correction, with a copy of this order and the amended complaint (ECF 6);

(7) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(8) ORDERS, under 42 U.S.C. § 1997e(g)(2), Commissioner Christina Reagle, Interim Deputy Commissioner Annyie Goeller, Warden John Galipeau, Director of Classification Jack Hendrix, Unit Team Manager Tracy Cornett, Caseworker Kathleen Dougherty, and Caseworker Marisha White to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

**SO ORDERED**.

ENTERED:  May 20, 2026.

/s/Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT